**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DE'ANGELA M. CLARDY | ) | Case No. 22-30089 |
| | ) | Chapter 13 |
| Debtor | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the Court on Debtor's Objection to the Claim of Commonwealth of Kentucky, Ex Rel Office of Unemployment Insurance (the "Objection"). In the Objection, the Debtor challenges Proof of Claim Number 9 filed by the Commonwealth of Kentucky, ex rel Office of Unemployment Insurance ("OUI") in the amount of $9,374.00. The Commonwealth opposes the Objection. At the hearing on the Objection, the parties declined to have an evidentiary hearing, but instead requested that the Court rule on the Objection based upon stipulations of fact to be submitted. On September 20, 2022, the parties filed Stipulations of Fact. Based upon the Stipulations, the record in this case, and the applicable law, the Court will SUSTAIN the Objection.

**PROCEDURAL BACKGROUND AND FACTS**

On August 4, 2021, the OUI sent to the Debtor a Notice of Determination stating that an audit had revealed that the Debtor worked or earned wages during time periods in which she claimed unemployment benefits. Based upon this audit, OUI asserted that the benefits paid to the Debtor during these time periods constituted an overpayment in the amount of $8,256.00. The Notice further stated that a penalty of $1,118.00 would be added to the amount of overpayments, resulting in the Debtor owing OUI $9,374.00. [BK Docket #47-2]

The Debtor filed her Chapter 13 Petition on January 24, 2022. The Debtor listed a debt owed to OUI in the amount of $8,256.00 as a general unsecured claim in her Schedule E/F (Creditors Who Have Unsecured Claims). The Debtor's Plan was confirmed on March 10, 2022, as a 60 month, 5% plan. [BK Docket #17].

OUI filed its priority proof of claim on April 1, 2022, in the amount of $9,374.00. [Proof of Claim #9]. This amount matches the amount claimed in the Notice of Determination sent to the

Debtor in August 2021, resulting from the Debtor's receipt of an overpayment of unemployment insurance benefits.

On April 26, 2022, the Debtor filed the Objection currently before the Court. The Debtor objects to the priority status of the claim filed by OUI. Specifically, the Debtor argues that because this is not a tax, there is no basis for the claim to be classified as priority. The Debtor asserts the claim should be treated as a general unsecured claim.

In its response, OUI argues that unemployment compensation overpayments are priority taxes under 11 U.S.C. § 507(a)(8).[1]

On September 30, 2022, the parties submitted the following Joint Stipulations of Fact (the "Stipulations").

> 1. De' Angela Clardy ("Debtor") received Unemployment Insurance benefits from May 2, 2020, through August 15, 2020.
>
> 2. On August 4, 2021, the Kentucky Office of Unemployment Insurance ("OUI") issued a Notice of Determination after an investigation into the Debtor's claim for Unemployment Insurance benefits.
>
> 3. The investigation was initiated when the OUI digital audit system matched an Unemployment Insurance benefit payment to the Debtor against wages reported by the employer, Jefferson County Board of Education.
>
> 4. This audit revealed the Debtor worked and earned wages during a week she received Unemployment Insurance benefits.
>
> 5. Jefferson County Board of Education reported wages for the Debtor for those weeks, and the Debtor failed to report these wages to the OUI, which resulted in the Debtor being overpaid Unemployment Insurance benefits.
>
> 6. The Debtor was given the opportunity to appeal the Notice of Determination by September 3, 2021.
>
> 7. The Debtor did not appeal the Notice of Determination, causing the

---

[1] OUI also made an argument that the alleged overpayment may be non-dischargeable under 11 U.S.C. § 523(a)(7). Section 523(a)(2)(A) could also lead to this debt being declared as non-dischargeable. Nevertheless, as the Debtor correctly points out, the relevant issue before the Court is whether the claim is entitled to priority status, not whether the debt may be non-dischargeable.

>Determination to become final on September 4, 2021, pursuant to KRS 341.420(2), resulting in a debt in the amount of $9,374.00, owed to the OUI.
>
>8. The OUI did not issue a lien or encumbrance on the Debtor's property.
>
>9. The Debtor filed her Chapter 13 bankruptcy on January 24, 2022.
>
>10. The OUI filed its claim on April 1, 2022, listing its debt as a priority debt.
>
>11. The Debtor filed an objection to the OUI's claim on April 26, 2022, [BK Docket # 23] challenging the claims status as a priority debt.

Stipulations [BK Docket #50].

## CONCLUSIONS OF LAW

"Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990). Nevertheless, equality of distribution is not the only policy, as the Bankruptcy Code also recognizes that some creditors receive special treatment. Consequently, the Bankruptcy Code provides that certain claims are to be given priority status over other similarly situated claims. A party seeking priority treatment of its claim has the burden of proof on its entitlement to such treatment. *In re Juntoff*, 636 B.R. 868, 874 (6th Cir. BAP (Ohio) 2022); *Rockstone Capital LLC v. Metal*, 508 B.R. 552, 559 (E.D.N.Y. 2014) (*citing, inter alia, In re Micek*, 473 B.R. 185, 188 (Bankr. E.D. Ky. 2012) (holding that the claimant must establish entitlement to priority by a preponderance of the evidence)). When considering the priority status of a claim, a court "must be mindful of the Bankruptcy Code objective of securing equal distribution among creditors and 'the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress.' " *Mich. Unemployment Ins. Agency v. Boyd (In re Albion Health Servs.)*, 360 B.R. 599, 604 (B.A.P. 6th Cir. 2007) (*quoting Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651 (2006)). However, "[i]t is common for Congress to prefer Government creditors over private creditors[.]" *Howard Delivery*, 547 U.S. at 666, 126 S.Ct. 2105 (*citing Travelers Prop. Cas. Corp. v. Birmingham-Nashville*

3

*Express, Inc. (In re Birmingham-Nashville Express, Inc.*), 224 F.3d 511, 518 (6th Cir. 2000); *In re Juntoff*, 636 B.R. 868, 874 (6th Cir. B.A.P. (Ohio) 2022)

Section 507(a) lists the claimants who are entitled to priority treatment. Tax creditors have always been included among those who have enjoyed priority status. 11 U.S.C. § 507(a)(8). Section 507(a)(8)(D), (E), and (G) gives priority to

> allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> (D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;
>
> (E) an excise tax on--
>
> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
>
> (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;
>
> (G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

11 U.S.C. § 507(a)(8)(D), (8)(E) and (8)(G).

In *United States v. Reorganized CF & I Fabricators of Utah, Inc., et al.*, 518 U.S. 213 (1996), the Supreme Court had before it the issue as to whether an underfunded pension liability constituted an excise tax within the priority provision of the Bankruptcy Code. In writing the majority opinion for the court, Justice Souter explained that in determining whether a particular exaction was properly characterized as a "tax," the Court "looked behind the label placed on the exaction and rested its answer directly on the operation of the provision." *Id.* at 220. The Court characterized the analysis employed as a "functional examination" that "turn[s] on the actual effects of the exactions." *Id.* at 224. Utilizing this approach, the Court found that the exaction of an additional charge on the underfunding of certain pension plans equal to ten per cent of the funding

4

deficiency was punitive in nature and, therefore, not properly characterized as an excise tax. *Id.* at 226. The Supreme Court recently reaffirmed its approach to distinguishing between taxes and penalties in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 567 (U.S. 2012).

In *New Jersey v. Anderson*, 203 U.S. 483 (1906), the Supreme Court held that a tax is a pecuniary burden where all those within the same class pay like amounts, those amounts are set by statute, and the consent of those paying is unnecessary. *Id.* at 492. In *City of New York v. Feiring*, 313 U.S. 283 (1941), the Court defined taxes as "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Id.* at 285.

Granting priority status to tax claims has raised the question of what exactly is a tax. There is general agreement that governmental assessments against income or on sales of property are taxes within the meaning of § 507(a)(8)(D). However, governments also raise revenue through other means. For example, governments may impose fines or penalties for unlawful behavior, or charge fees to engage in activities subject to public regulation (park fees or hunting licenses), or even engage in commerce, such as the sale of logging rights. The question then becomes which charges qualify as a tax in order to get priority treatment under the Bankruptcy Code. In this case, the specific question is whether OUI's right to be paid for unemployment compensation overpayments are a tax entitled to priority under § 507(a)(8)(D) or is it just another general unsecured claim? A claim that does not qualify for priority under § 507(a)(8) should be treated as a general unsecured claim. *In re Juntoff*, 636 B.R. 868, 874 (B.A.P. 6th Cir. 2022).

The statutory origin for the Debtor obligation to OUI can be found in KRS 341.415(1)(A), which provides:

> (1) (a) Any person who has received any sum as benefits under this chapter or any other state's unemployment insurance statutes or any United States Department of Labor unemployment insurance benefit program, providing the secretary has signed a reciprocal agreement with such other state or the United States Department of Labor as provided in KRS 341.145, while any condition for the receipt of such

5

> benefits was not fulfilled in his case, or while he was disqualified from receiving benefits, or if he has received benefits in weeks for which he later receives a back pay award, shall, in the discretion of the secretary, either have such sum deducted from any future benefits payable to him under this chapter or repay the Office of Unemployment Insurance for the fund a sum equal to the amount so received by him.

KRS 341.415(1)(a). There appears to be no dispute that the Debtor owes the amounts in question, but only whether such debt is entitled to priority status. OUI asserts that the debt in question here is entitled to priority status under §507(a)(8)(D), (E) and (G).[2]

To resolve whether a debt is a "tax" or a "penalty" for purposes of the Bankruptcy Code, the Sixth Circuit requires a court to "engag[e] in a 'functional examination' of the applicable statutory scheme to determine whether it falls within the federal statutory definition." *Juntoff*, 636 at 877 (*quoting Rizzo v. Mich. Dep't of Treasury (In re Rizzo)*, 741 F.3d 703, 705 (6th Cir. 2014) (*citing CF&I, Inc.*, 518 U.S. at 224, 116 S.Ct. 2106). The "statutory labels of the exaction are not dispositive; the court must instead evaluate the statute's 'actual effects to determine whether it functions as either a tax or else as some different kind of obligation.' " *Id. (quoting Boston Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy*, 365 F.3d 51, 58 (1st Cir. 2004)).

The Ninth Circuit set forth a frequently cited four-prong test for determining whether a particular exaction should be characterized as a tax for bankruptcy priority purposes:

> (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
>
> (b) Imposed by, or under authority of the legislature;
>
> (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
>
> (d) Under the police or taxing power of the state.

*County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.)*, 675

---

[2] While OUI makes mention of §507(a)(8)(E), which addresses excise taxes, OUI does not address or otherwise make any argument that the debt in question here constitutes an excise tax. *See In re Albion Health Services*, 339 B.R. 171, 177 (Bankr. W.D. Mich. 2006) (only excise taxes "on a transaction" are entitled to Section 507(a)(8)(E) priority).

F.2d 1062, 1066 (9th Cir. 1982).

The Sixth Circuit criticized the *Lorber* test as insufficient in distinguishing taxes from other types of payments owed the government, such as fees for service or criminal or civil penalties. *See Yoder v. Ohio Bureau of Workers' Comp. (In re Suburban Motor Freight, Inc.)*, 998 F.2d 338 (6th Cir. 1993) ("*Suburban I*"); *Ohio Bureau of Workers' Comp. v. Yoder (In re Suburban Motor Freight, Inc.)*, 36 F.3d 484 (6th Cir. 1994) ("*Suburban II*"). The court noted that "the test, in particular its 'public purpose' requirement, did not limit in any meaningful way the circumstances under which government claims would be entitled to priority" since "all money collected by the Government goes toward defraying its expenses, and is used for public purposes." *Suburban II*, 36 F.3d at 488. Thus, "to say as a matter of definition that all taxes are collected for public purposes does not allow the Government to say that all funds collected for public purposes are taxes...." *Suburban I*, 998 F.2d 338, 342 (6th Cir. 1993).

The Sixth Circuit found that satisfaction of the *Lorber* test is necessary to qualify a claim for priority treatment, but it identified two additional factors that refine the public purpose element: "(1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government claim not disadvantage private creditors with like claims." *Suburban II*, 36 F.3d at 488.

This Court believes that the functional approach engaged in by the Sixth Circuit, using the six factors outlined in *Lorber* and *Suburban II* as a guide, sets forth the type of analysis required under the Supreme Court precedent discussed above when a court must determine whether a particular government exaction is a tax for priority purposes under the Bankruptcy Code. *In re Albion Health Services*, 360 B.R. 599, 610 (B.A.P. 6th Cir. 2007).

While the requirement to repay unemployment overpayments has some tax characteristics, engaging in a functional examination of the obligation and its source reveals its non-tax character. Reviewing the language of KRS 341.415(1)(a), it appears clear that the requirement to repay overpayments is punitive in nature. OUI has asserted that the Debtor misrepresented her income

7

when she was receiving the unemployment benefits, in its Notice of Determination dated August 4, 2021 (see Docket Entry 47-2). The Notice of Determination includes the following language: "The claimant certified under penalty of perjury that the information provided was complete and truthful. Each false statement or failure to disclose a material fact in order to obtain or increase any benefit is a violation of KRS 341.990(5) and may be referred for criminal prosecution." The Notice directed the Debtor to repay the overpayment ($8,256.00), disqualified the Debtor for additional weeks of benefits "for the act of misrepresentation," and imposed an additional $1,118.00 "penalty" to the amount due. This is not the language or characteristics of a tax, but instead is more akin to a penalty. All these actions set forth in the OUI's own Notice of Determination point to a punishment for an alleged wrongful act, not a tax which serves to fund the state.

Moreover, these penalties apply only to people who inappropriately received benefits. The exaction serves primarily to punish the unlawful act of receiving benefits when not eligible for such benefits. The penalties do not apply to all persons receiving unemployment benefits, but only to those who inappropriately receive the benefits. In this case, the Debtor's liability arises solely by virtue of her inappropriate receipt of benefits. Thus, it is not a liability "universally applicable to similarly situated persons or firms." As in *Suburban II*, this lack of universality prevents OUI's claim from being accorded priority treatment.

Here, the exaction imposed on the Debtor was not an exaction imposed on individuals in order to fund the program. It was instead a punitive measure attributable to her alleged willful misrepresentation to the State of her unemployment status.[3] Accordingly, the overpayment is not entitled to priority status under § 507(a)(8). *See In re Towler*, 493 B.R. 239, 244 (Bankr. D. Colo. 2013). To read the statute as a tax as OUI suggests, would mean that virtually every amount owed to the state would qualify as a tax. This was clearly the concern of the Sixth Circuit in *Suburban II*.

---

[3] Of course, these misrepresentations, if true, could support a determination of nondischargeability, should OUI seek to pursue that course of action. As stated above, however, priority rather than nondischargeability is the issue currently before the Court.

## CONCLUSION

For the aforementioned reasons, the Court finds that OUI has not met its burden of proof on its entitlement to priority treatment. The sole issue presented to this Court is instead to determine whether OUI's right to seek reimbursement should be given priority over other rights to receive payment in connection with the administration of this bankruptcy estate. To make this determination, the Court must interpret § 507(a)(8). The Sixth Circuit has ruled that § 507(a)(8) is to be construed narrowly. *Suburban I*, 998 F.2d at 342. In this case, the Debtor's obligation to OUI can best be characterized as a penalty for an overpayment of benefits due to the Debtor's alleged misrepresentations. While such misrepresentations may make the debt nondischargeable under § 523, they do not make the obligation a tax in nature. As such, the claim is not entitled to priority treatment under § 507(a)(8).

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DE'ANGELA M. CLARDY | ) | Case No. 22-30089 |
| | ) | Chapter 13 |
| Debtor | ) | |
| | ) | |

**ORDER**

In accordance with the Memorandum entered this same date, and the Court being otherwise sufficiently advised,

It is hereby ORDERED that the Debtor's Objection to the Claim of Commonwealth of Kentucky, Ex Rel Office of Unemployment Insurance is **SUSTAINED**.